Good morning, Your Honors. My name is Miles Cohn. I represent Houston Bluebonnet, the appellant in this case. I'd like to start by addressing the jurisdiction question that the Court has asked us to take a look at, and that involves the finality of the Bankruptcy Court's orders. And I'd in particular like to make two points, if I may. One is that no claim objection was filed with respect to these so-called informal claims. Filing of a claim objection initiates a contested matter of its own. That didn't happen here. And the importance of that distinction can be seen in comparing the two cases the Court asked us to look at. The Giles case in the First Circuit involved an actual proof of claim filed. There was then an objection filed that it was late, and the claimant responded that, well, wait a minute, earlier we filed something that we're going to call an informal claim. So the informal claim issue was tied up in the actual claims process. That's not what happened here. I think this case is more like the Greyhound decision, which this Court made, which involved a ruling of the Bankruptcy Court that allowed late claims to be filed. There wasn't actually a claim objection filed. That wasn't before the Court. The issue was the discrete question of whether late claims could be filed by, I think it was, 24 claimants. And this Court said that that was a discrete issue that could be appealed, and I think this is more like that. And a second point I would make, Your Honor, on jurisdiction is a point that this Court has made in cases in the past, including the Sarko decision and the Delta Produce decision, which is that finality in bankruptcy orders is to be looked at in a more flexible light and a more practical light that one might take ordinary district court decisions. That's really because, I mean, you've got these massive bankruptcies with numerous adversary proceedings, hundreds, sometimes more than that, claimants. And so it's saying you shouldn't have to wait until the whole bankruptcy is wrapped up if you have this one discrete dispute that's decided years earlier. So the question here is, is this discrete dispute wrapped up? And I guess going back to your first point, I mean, it seems to me you're definitely contesting, though, whether this claim has to be paid. I mean, even if it's allowed, I mean, there's underlying litigation about who has an interest in this oil. Certainly the amount of the claim hasn't been fixed yet. So it seems to me, isn't there a lot more for the bankruptcy court to do if we affirmed here? Well, that's where I might point out the practical aspect of this. We prepared a plan of reorganization and a disclosure statement based on what we understood to be a conscious decision by these claimants not to file a claim in the case or claims in the case. And we prepared our plan. We prepared our disclosure statement. We were prepared weeks away or less from the hearing on the disclosure statement, and they changed their mind or woke up or whatever and filed first a motion to file late claims based on excusable neglect, which was denied. And then they said, well, then we filed some things that we like to claim are informal claims. The practical issue is these claims are so many and so large, if they're allowed, our plan doesn't work. It's not like the Greyhound case where the question is how much should they be paid out of a pot of money set aside. The question is what do we do with the case? If these people have a claim, these claimants have a claim, our plan won't work. We either have to go a completely different plan route or ask to convert or dismiss. I don't know what we'll do, but they are by far the largest monetary claimants in the case. Am I looking at an over-technical viewpoint to say that the order that is appealed before us is whether the material before the bankruptcy court satisfied an informal proof of claim? And that is the only issue. And it is required under the bankruptcy law that a proof of claim is required. Now, it may be formal or informal. And the question is whether this is satisfactory for an informal proof of claim. And that's the issue before us. And that is a final order. And if we determine that it is not a satisfactory proof of claim, then the case is over. That's right. That particular issue is over. Then we would go forward with confirmation of our plan based on there being no claims from these claimants. But that's the issue. That issue would be decided. that resolves whether the claimant has a litigable claim in the bankruptcy court. Yes, Your Honor. I think it does. It's a discrete issue. And it's, as I said, similar to this court's decision in the Greyhound case where the court decided that some claims could go forward. So, I mean, the issue before us is not whether the claim is valid or invalid, but it's simply whether all of the material before the bankruptcy court satisfies an informal proof of claim. Correct. Is there a claim at all? Similar to Greyhound, is there a claim? If we then, who knows what we'll do. If there are claims, but we may object to it, and that creates a separate contested measure. Can you tell me why this does not satisfy an informal proof of claim? Correct. I think that the courts below, both the bankruptcy court and the district court, made several fundamental misconceptions. One of them is they conflated a claim against the debtor with a claim against the debtor's bankruptcy estate. And this case illustrates the difference because there is state court litigation and two lawsuits, one of them removed and remained, but involving title, their title issues. And one could logically say we want to litigate those title issues in state court or in a different proceeding, but we don't want to file a claim for monetary relief against the limited funds in the estate. Why? Because we don't want to submit ourselves to the jurisdiction of the court for other purposes. So there could be a logical reason why you may want to go litigate title, but yet not file a claim. And in the opinions of both the bankruptcy court and the district court, they repeatedly talk about, well, clearly there's a claim, there's a claim, you know, no, there's a claim, but it's not against the estate. What significance is there, the fact that the claim was litigated in the state courts in Texas and a verdict came out some three or four months later after the timing required for the proof of claim? What significance does that have in your argument? Because there's still a distinction between having a claim, which could be against the property itself, a title issue. They might say that they're going to collect their money out of future revenues from the oil and gas well at issue and not file a conscious decision one makes to file a proof of claim to participate in the cash that's in the bankruptcy estate. And we thought they had not made that election and based a plan on that. So there can be logical reasons why you want to have the litigation to decide a title issue and you might want to resolve those, even the monetary issues, against the race, the asset, and not the money in the bankruptcy estate. And to have an informal proof of claim, the claim has to be against the estate. And part of that also is, the second misconception, that it has to be filed by the creditor. And this is why, obviously, when we list on our schedules, you know, so-and-so has a claim against the estate, it's disputed. That's not a claim because we, the debtor, filed it, the creditor didn't file it. Now, part of what they're arguing that an informal claim is is that we removed the state court litigation to bankruptcy court. Well, all that shows is that there was a title dispute and some money was claimed, not that a conscious decision was made to file a claim against the debtor's bankruptcy estate by the creditor. Why can't we make this more simple than you are making it now? Why can't we just say that, and I certainly don't understand bankruptcy nearly as well as you do, but why can't we just simply say that there was no cognizable proof of claim here because it had not been reduced to some certain, to any degree, and say that consequently you have to file a proof of claim to stay in bankruptcy court? You're out. Well, you're actually leading into my third point, Your Honor, which is that I think the bankruptcy court made a mistake here in allowing, as an informal claim, something that doesn't meet the substance of a proof of claim. The cases across the country have said for many years that the whole idea of the informal proof of claim doctrine, which of course is not in the statute, is that somebody filed something with the bankruptcy court that didn't use the official form but included the substance of a claim, which begins with who are all the claimants and how much are they claiming? These documents were titled, established a title dispute, and they said we're owed revenues from these wells, but it never said person A is owed this much, person B is owed, and so forth. Well, how would they know that? I mean, you have the well information. How are they supposed to know how much the wells have produced? Well, actually, Your Honor, first of all, the language in the cases say if ascertainable, they should state the claim. And I think you need to go no farther than the appellee's brief because they explain why these amounts were ascertainable. They take certain information and they compute it, and they calculate it. As a bankruptcy attorney, I have filed claims and prepared claims where we estimate claims where you don't have the exact information, but at least you put down a claim for each person on the proof of claim form. And I think that one of the things I noticed in rereading the bankruptcy court's decision, just getting ready, is the way he kind of ‑‑ it's an awkward position that Judge Isgur took where he said, well, these claims are invalid, they're insufficient, but we're going to call them informal claims and they have to be redone. Well, how do you do that? And he cited some cases that deal with situations where someone uses the official proof of claim form, they purport to file what's a proof of claim, they fill it out, and there's some technical objection like one of the requirements is you attach all the documents to back up your claim, and let's say they don't attach all the documents. Well, if that happens, it's still a proof of claim, and it's the debtor's burden to object to it, and the difference is that the burden of proof is with the claimant instead of the debtor because there's some problem with the proof of claim. And Judge Isgur said, well, we'll kind of treat it like that. It's an informal claim, but it's invalid, so it's simply a matter of the burden of proof switching. Counsel, you keep referring to it as a title dispute. Are you suggesting that it's not quantifiable? That's my first question. I guess while answering that, would you consider, would your client consider these debts, such as they are, to be discharged if, in fact, these are not informal proofs of claim? A portion of them are, Your Honor, because the debt that accrues up to the date of bankruptcy, the prepetition claim would be discharged in effect because no claim was filed. But I thought you just said something about taking it out of future revenues, that we didn't need these claims in this bankruptcy, that this upsets the apple cart, because if it's considered a title dispute, well, then they can take out of future revenues whatever is owed. That sounds contrary. Yeah, I think, Your Honor, I'd have to correct myself, that there's a certain portion of the revenue claim that would be lost, and that is what is accrued up to the date of bankruptcy. But everything after that would be adjusted outside bankruptcy if title is adjudicated their way. There is, in this case, a limited amount of funds in the bankruptcy estate. It's either going to be used to go all to them to pay their prepetition claim if they win, or it goes to pay administrative costs and other creditors. And that's really the issue here. You're right. It is, if they elect, there is a downside or a risk or something they lose by electing not to file proof of claim, which is if they do not have a claim for whatever accrued prepetition. And in exchange for that, they get something, which is it may help them with their argument that they want this decided in state court or not in the claims process, and they want a jury, which they got. And that's a decision which we understood these claimants had consciously made. That is, they would give up their claim against that limited cash in the estate in exchange for some benefit on the title. Isn't that fairly common for debts to be reduced to judgment subject to the bankruptcy court's jurisdiction? It is, Your Honor, but it's also common that somebody who has a claim like that would still file a proof of claim and estimate, just like they do in their state court pleading, how much they think they're entitled to. And even if they don't know for sure, you file the claim, you estimate. If you don't have all the data, you know they have some data. It's not like they don't have any. And you estimate what your claim is and file it. But in a case like this, especially this, where there can be a logical reason not to file a claim, which is to avoid the claims process on your title dispute, they should be required to file something called proof of claim. And these documents, for reasons we briefed, for many reasons we briefed, we just don't think meet the requirements of the involuntary claims doctrine, Your Honor. All right, thank you. You save five minutes for rebuttal. Thank you. Mr. Skelton. May it please the Court. The substance of this case is about the appellant trying to put form, and specifically official form B-10, over substance. Because if a proof of claim had been filed in this case using this one-page, two-sided page form, the substance of the claim would have been stated in the petition, in the pleadings of the Jaffa parties from the Brazoria County action and from the Hammond parties. In other words, this is a complicated set of claims. This is not, for instance, that form B-10 is more suited towards, okay, a company sells widgets to the debtor and sends an invoice. Then a bankruptcy is filed. You fill out form B-10. You attach a copy of the invoice. Simple. In this case, we have wells that have been continuously producing, remarkable, since 1913, and they'll probably be producing in 2113. And so aspects of this case involve a dynamic process, which involves continued requirement for the appellant to provide us, as you point out, the information on net profits. This is not like deciding how much is a royalty owner owed on his lease, because all he has to know is what does the state say the amount of production is, what was the price at the time, and what's my fractional interest. In this case, both the Jaffas and the Hammonds are trying to enforce net profits interests, which under Texas law are interests in real property, but they still require the input from the working interest owners. You can't calculate it unless you know and have their records. And so at the time this case was filed, it wasn't like my hypothetical about the company that sold widgets to the debtor all before the petition. We have an ongoing dynamic. And we have claims that are not claims that ordinarily can be resolved in the claims process. And I'll give you an example. Before you do that, be that as it may, what efforts were made? You understand that there's a Chapter 11 plan that is going to be presented to the bankruptcy court. It's going to have input of creditors and those who have interests. You also have claims that you want to litigate in state court. What efforts were made by your client to appear in bankruptcy court? It would seem to me that you understand that the train's leaving the station, that there is a plan. And guess what? Your client's interests aren't a part of it. Was any objection made or any type of? Putting aside the issue of the proof of claim, whether formal or informal, was there any effort in bankruptcy court to have your claim accounted for when the plan was put together? Well, the plan was filed after, rather long after, we had. The first thing we did was we sought to remand the removal of the Jaffet case. And you might ask, why did you do that in the Jaffet case and not in the Hammond case? Pure and simple. The Jaffet case had been going on in Brazoria County since 2004 and involved a lot more money. We decided to leave Hammond in the bankruptcy court and let Judge Isger try it as an adversary proceeding. We asked for remand because it made no sense to have Judge Isger reinvent the wheel and learn over a decade worth of facts. But we were the only creditors that took any action in this case. And I have to read this to get the full flavor of this, and this is really part of our equitable argument. I'm asking specifically, though, about when the plan is presented, presumably you or your client got a copy of it and realized that your clients are nowhere mentioned, are nowhere provided for, it seems like there would have been some reaction to that in the bankruptcy court to say, time out, we're litigating over here, we've got a potential claim, quantifiable, unquantifiable, but we need to be accounted for to the extent the pie is being divided up. We need to be accounted for. That's what I'm asking is, what was done at the time of the plan came up for hearing and confirmation? Well, the plan has never come up for hearing, never come up for confirmation. And what happened was I filed a motion which is before the court, the motion to regard the Jaffa pleadings and the Hammond pleadings as informal proofs of claim. That is precisely what kicked over the beehive, and that is the action that I took. And I think in context the court must realize that from Judge Isger's standpoint, this bankruptcy case really is about these two lawsuits. That is the case. In fact, he said that Houston Blue Bonnet has no secured creditors, and its unsecured creditors are complies entirely of insiders, lawyers, accountants, and various parties to this adversary proceeding. The focus of Houston Blue Bonnet's bankruptcy is this lawsuit, and you can't transmortify the relationship between the parties merely by filing a bankruptcy petition. And then key, there is no bona fide bankruptcy purpose. That came in his memorandum opinion remanding the Jaffa case. May I ask you what would be the consequence if we affirm the district court, the bankruptcy court? If the order is affirmed? What is the consequence thereafter? All right. And I think the consequence is it's really simply existential. A claim exists. And as you point out, Judge Jolly, it's not the amount of the claim. It's not whether it's an allowed claim. This has to do with the determination of our status as claimants. And then, frankly, the Jaffa judgment, which is now an appeal in state court, and the Hammond, the ultimate result in the Hammond case, will fill in the blanks. That's all that's left. It could be that you get zero because maybe that state court litigation gets reversed. It could be. Maybe you don't prevail in the federal litigation. So, I mean, that goes to the jurisdiction, because this might just be a hypothetical question that never needs to reach an appellate court if you end up getting zero. I mean, Judge Isgra already said you have no prima facie validity, right? Well, right. But that's simply because it doesn't mean we don't have a case. It just means, you know, when you file Form B-10, the bankruptcy proof of claim form, unless they file an objection, your claim has prima facie. You have a lot of hurdles still to overcome to get money out of this estate, right? Well, with respect to what I think we have to do is just, you know, finalize the Hammond adversary, get our judgment there, and then we already have a $1.3 million judgment from Brazoria County. And I think in Judge Isgra's mind and certainly in my mind, those proceedings are the place where these claims will be liquidated, not through the proof of claim process. Right. But, again, I didn't understand. Maybe you told me, but I didn't understand. What are the consequences of affirming the bankruptcy court in this case? And you go back to bankruptcy court. Are you still in bankruptcy court? Are you out of it? Or is it all transferred to the state court? Or what happens after, if we affirm the district court and say that a proof of claim is satisfied here? Well, what happens is the debtor has to provide for our claim under the plan. That's really what I'm asking. What would be the consequences if we reverse the district court? If we reverse the district court and the bankruptcy court, it's federal-like monopoly. Do not pass go. Do not collect $200. We will not have a claim against, no matter what happens in the state court proceeding or the Hammond proceeding, we won't have a, but it's very important you understand, we'll not have an unsecured claim for prepetition amounts. Since this well is continuously producing, on an ongoing basis, we will, if our judgment is affirmed, or rather the Hammond adversary and the Fort Bend or Berzeria County adversary, we'll have a judgment for the amount stated. However, in bankruptcy court, the Judge Isger will say, all right, well, I'm not going to allow that prepetition piece, but you've got a postpetition administrative claim for everything that's accrued since then. If we reverse, you are out. Is that what you're saying? If you reverse, we're out as to our prepetition unsecured claim for dollars. But the actual, we're not out of court on the substantive issues such as title, you know, establishment of our net profits interest. Why is that so? Because those interests have to do with title to land, not a claim for dollars, a claim for damages. For the bankruptcy court. Correct. That is my opinion. And there's another thing that gets to be kind of a wonky bankruptcy distinction, but when I filed that motion to approve an informal proof of claim, that created what is called a contested matter under Rule 9014. But there are certain kinds of matters that cannot be adjudicated in a contested matter, and they include, and those matters have to be in an adversary proceeding. So under Rule 7001, if a matter is removed from state court, that's an adversary proceeding. And also any action to establish the extent, validity, or priority of an interest in property is an adversary proceeding. So let's suppose there had been no Brazoria County action and no Hammond action, and I'd filed a proof of claim and say, here's our claim for title and possession. That would still have to be an adversary proceeding because you can't decide issues like title and such matters in this proof of claim process, which is really designed for determining what claims for dollar amounts for damages do you have and how much are they. So these other matters would not have been covered. And as to the quantum of showing of our claim, in truth, the petitions that the court found constituted an informal claim include a lot more information than one could divine from this official form. You've got to have the substance of all those claims for real property recovery, for recovery of title and possession, and such matters. And we allege those matters in spades, in great detail. And I believe that is why the court felt that we had satisfied our obligations in proving up an informal proof of claim. I mean, I won't. What your point is, it's indicated that there are reasons why one would not want to file a proof of claim in the situation that you're in. Why would you not want to file a formal proof of claim? Well, first of all, Mr. Cohn, who I've known since high school debate in Houston, is, shall we say, insinuating that I might have had certain motives to do or not do something. But if it were the case that I had such a motive, I might have said, well, perhaps I shouldn't file a proof of claim until I make sure Judge Isker remands the case to Brazoria County because we want to have a Brazoria County jury. We don't want to have it tried here. But I certainly would not admit and, secondly, I deny that I had any such intentions. Bottom line is, obviously— Deny the allegation and resent the allegator. I have the greatest respect and always have for Mr. Cohn. He's a great guy, and we're good colleagues. And I do think one thing about our bar in Houston, the bankruptcy bar, we know each other and we're friends with each other, and this is— I know that. I know that. However, I will say Judge Isker had it right when he says there is no bona fide bankruptcy purpose in this case. I'll have to see what Miles says about that. But I think we've rung all the bells on the substance of our motion, but I do want to address jurisdiction, if I may. And I really think, first of all, the Giles case is a case that I think kind of preceded this flexible finality line of cases because if you think about it, first of all, bankruptcy has, as we know, through the continuum of the bankruptcy case, there are a number of discrete events and disputes, and this is one of them. And I actually think that one of the best analogies to our situation is, in trying to parse out what flexible finality means, it's sort of like the collateral order rule. And I really think you can make that analogy because a collateral order, if one has a collateral order situation, it involves claims of right separable from and collateral to the rights asserted in the action, too important to be denied, reviewed, and too independent of the cause of action itself. And that's from Cohen v. Beneficial Insurance Industrial Loan Corp. 337 U.S. 541 at 546. And so I think what we're really saying is this determination of whether we have a quote claim is not the claim itself. It's sort of like the distinction between the dancer and the dance. It's two different things. This motion has to do with whether we have the status as a claimant. Now, and I'm sure Miles would offer the same offer, but we'd be happy to offer additional briefing. But I do think there's another case that I think kind of touches on this. N. Ray Sharmer, 475 F. Second 560 at 563, which is a Sixth Circuit case from 1973, holding that an order that determined that movements did not qualify as creditors was final for purposes of appeal because it conclusively determined the party's status as creditors. That makes sense if they're being kicked out if they're saying they have no creditor status. That ended that creditor's claim in the bankruptcy case. Right. And I'm frankly— How do you get around EGLE, the EGLE bus case, which seems to say the normal rule is that allowing an untimely proof of claim to be filed as an informal claim normally would not be subject to appeal, and it only was in that case because there were just these ministerial functions the bankruptcy court had left to perform? I really think that the distinction here is that, in that matter, the claimants were trying to establish their claims, the amount, the underlying amount, everything else, in the proof of claim process. And here, everybody knows, Judge Isgra knows, Mr. Cohn knows, I know, that the amount of these claims and the substance of the claims and our title-related things are going to be determined in the Hammond adversary and in the Brazoria County suit. And so I really think it's distinguishable because, again, going back to my widget maker, the widget maker, when he files his claim in the bankruptcy court, he's not going to have any jury trial down in Brazoria County or substantive title issues. He just wants the judge to say, yep, you've got a claim for $100,000 or whatever it is. But it seems to me all these moving pieces here is more of a reason why we shouldn't exercise jurisdiction if, like I said, you might not win all these other issues, and this whole issue of whether your claim was sufficiently filed would become moot. Well, but here's why it's different. We have a different situation because the Hammond adversary proceeding, it has its own life, as you know from already ruling on that appeal. And so what's going to end up happening, there's going to end up being a judgment, and it will run on up the stairs, and that will determine the amount of our claim. It will determine these title issues and so forth. And that's not going to happen in the proof-of-claim process. It's separate from the proof-of-claim process. As is, and my view is that as a practical matter, when the appeal of the Jaffa case through the Texas appellate courts wins its way, and ultimately we win or lose, if we win, Judge Isker is going to say, well, okay, here's how much your claim is. But it's not going to happen through this proof-of-claim process. But here's what I understand in terms of jurisdiction. The order for us, that we've got to determine whether we have jurisdiction over that order, is the question of whether an informal proof-of-claim has been satisfied. We decide that one way or the other, that's a final decision. You tell me that it is final with respect to the proof-of-claim. I mean, if we reverse, then you are out. If we affirm, you proceed. Is that correct or incorrect? That's correct. So it is a final order of a particular unit of this case. That is my position, yes. But the other case that was dismissed for jurisdiction, the adversary proceeding, it would have been the same thing. If we reverse there, that would have said no interest in the wells, right? Well, right. But there you have a more traditional situation where you have a summary judgment, which you held to be interlocutory because it determined a number of substantive legal issues, but there was still left the damage, ultimate damage finding. And I would suggest that that's more like a typical appeal that gets bounced because it's interlocutory, because it's not a final judgment. The adversary proceeding is really just a lawsuit. It's just a lawsuit. Correct. That's correct. All right. Thank you, Mr. Scott. All right. Thank you. Your rebuttal? Who won the high school debate tournament? It's been a while. If you could address at the start, and he emphasized this point Judge Isger made, which is in the bankruptcy court's view the whole purpose of filing this bankruptcy was because of this litigation against his clients and that that meant there was clear notice and no surprise about these proofs of claims. It's certainly not unusual that a bankruptcy case is filed because of very difficult litigation that raises large claims. It's also – But Isger's point was that means that everyone knew these demands on the estate were out there. That gets back to the point I made. There's a difference between – there are different types of claims. You can have a claim to title. You can have a claim against the debtor, which is a title claim going forward, and you can have a claim against the estate and the limited cash in the estate. Those are different things. You do have to file a proof of claim if you want to participate in the distribution of cash that's in the estate from pre-petition operations. And that proof of claim necessarily requires some estimation, if not certainty, about the amount of money you are claiming. Is that correct? Correct, Your Honor. And if I may, when Mr. Skelton started, he seemed to suggest that, well, the proof of claim form doesn't really fit well here, and he didn't know all the numbers. I've had these situations before. You file a claim and you attach your lawsuit. That is the support for your claim. And you list your claimants and you estimate your claims. It's not like the proof of claim is due the day after the filing of the case. You do have some time, and there are procedures in the bankruptcy court, a Rule 2004 examination, for example. If there is data you need to estimate your claim, you have a period of time to get that data. And as I mentioned earlier, Your Honors can just look at the appellee's briefs, which says that their claims are ascertainable. Here, they did not file a proof of claim. Not only didn't they file a proof of claim, but what they rely upon for an informal proof of claim is what you yourself have filed and not what they have filed. Principally, yes, Your Honor. And that gets to my second point, which is that there's a distinction between the creditor filing something and the debtor filing something. The debtor filing something saying, gee, we know there's a lawsuit out there which may affect title, which may affect other things, doesn't mean that we know they're going to make the conscious procedural decision to file a proof of claim in the case. That is something you have to do. And I think that when we start getting into, well, all these papers, you know, just somehow. If we reverse the bankruptcy court and hold that the proof of claim is not satisfactory, then it goes back to the bankruptcy court to resolve all of these issues of title and other matters that are still pending. Correct. And it also goes back. I could finally get my hearing on my disclosure statement and plan, which, you know, as they often do, will not resolve all of the title issues, but it will say here's the cash that the estate has, here are the claims that exist as of this date. And there are some. They would be out on that. They would be out, and other creditors would get paid to the extent cash is either in the estate or contributed to confirm the plan. And then litigation may still go forward. It just wouldn't, as Mr. Skelton says, they don't have a pre-petition. It would be a very neat way to resolve the case. I mean, it may not be fair to everybody, but it would be a neat way, it seems to me. I think it would be fair to the debtor because we relied on the fact that they didn't file a claim. And, you know, I took the time to draft a plan and draft a disclosure statement and assuming that that was their conscious decision. And the question is, you know, as I mentioned earlier, first they filed a motion to file a late claim based on excusable neglect. So they didn't think they had filed a claim. And I can't recall how it came up. It might have even been Judge Isger's suggestion that, well, maybe this is all an informal claim. But by his own findings, Judge Isger said they didn't meet the substantive requirements of a proof of claim. It's not like they just filed something else. They filed something that indicated they wanted a claim against the cash in the estate that satisfied this kind of substantive information. It's not hard to do it either. You can use the form. You fill it out as best you can, and you attach your lawsuit if you want to file a claim. And there is a bar date. There was not a motion to extend the time, and there wasn't a claim filed. That does have some consequences. It doesn't mean they don't have any rights going forward, which they will litigate. And with respect to the jurisdiction issue, finally, I'll just notice I certainly agree with Mr. Skelton on that. And the point that Your Honor just made, which is that the Hammond case that was reversed was an adversary proceeding. These are contested matters. They are treated differently. And, again, if you go back to the Court's explanation in other cases about the practicality of finality in the bankruptcy case, it makes sense to treat the decision on the informal proof of claim, I think, as a discrete matter. There hadn't been a claim objection yet. If that happens, that's a different matter. Thank you, Your Honor. All right, the case is submitted. Thanks to both sides for the arguments.